■ CONTINENTAL METALS CORPORATION, Respondent, v MUNICIPAL WARE-HOUSE COMPANY, Appellant. — Order, Supreme Court, New York County (Lehner, J.), entered on April 5, 1982, affirmed for the reasons stated by Lehner, J., at Special Term. Respondent shall recover of appellant $75 costs and disbursements of this appeal. Concur — Kupferman, J. P., Carro, Fein and Kassal, JJ.

Silverman, J., dissents in a memorandum as follows: I would reverse the order appealed from, deny plaintiff's motion for summary judgment, and grant defendant's motion for summary judgment dismissing the complaint. Plaintiff delivered certain cobalt to defendant, a public warehouse; defendant has not returned the cobalt and is unable to explain the loss of the cobalt other than to conclude that the only plausible explanation was a criminal act on the part of one of its employees. The warehouse receipt contained a rather usual provision that: "(b) No action at law or in equity shall be brought in connection with any loss or damage prior to the expiration of sixty (60) days after presentation of claim therefor, nor shall such action be brought at all unless brought within one year from the expiration of the sixty day period last mentioned." This action was not brought within the required one year and 60 days after presentation of claim. Plaintiff, however, contends that it is not bound by this provision of the contract because the unexplained failure to return the stored merchandise constituted a conversion by the warehouse company, and that thereupon it ceased to function as a warehouse and lost its entitlement to the protection afforded by the agreement of storage, relying on *I.C.C. Metals v Municipal Warehouse Co.* (50 NY2d 657). However, the *I.C.C.* case I think is inapplicable. That case involved the provision of the warehouse receipt limiting the amount of the warehouseman's liability to $50 (unless a larger amount is contracted for). The Court of Appeals said that such a limitation of liability does not apply where the warehouseman is held liable in conversion. The court pointed out (p 663) that this rule "has now been codified in subdivision (2) of section 7-204 of the Uniform Commercial Code." The court further said (p 663): "Any other rule would encourage wrongdoing by allowing the converter to retain the difference between the value of the converted property and the limited amount of liability provided in the agreement of storage. That result would be absurd. To avoid such an anomaly, the law provides that when a warehouse converts bailed property, it thereby ceases to function as a warehouse and thus loses its entitlement to the protections afforded by the agreement of storage." Neither the statute nor the policy consideration applies to the present case. Subdivisions (2) and (3) of section 7-204 of the Uniform Commercial Code cover contractual limitations of the warehouseman's liability. Subdivision (2) provides that a warehousing contract may include a provision limiting "the amount of liability in case of loss or damage" but further provides: "No such limitation is effective with respect to the warehouseman's liability for conversion to his own use." Subdivision (3) significantly contains no such exclusionary sentence. It provides merely: "(3) Reasonable provisions as to the *time* and manner of presenting claims and *instituting actions* based on the bailment may be included in the warehouse receipt or tariff." (Italics mine.) Thus the fair reading of the statute would seem to be that a warehouseman cannot contractually limit the amount of liability where he is guilty of conversion but can contractually limit the time of bringing suit. The statutory difference between the two provisions reflects the difference in

policy considerations applicable to the two situations. The warehouseman, who knows that if he converts $100,000 worth of property he will only be liable for $50, would be encouraged to convert. But a warehouseman who would be liable for the full amount will not be encouraged to convert because the bailor would have to sue him within one year and 60 days after presentation of the claim; the bailor after all is perfectly free to, and in the vast majority of cases will actually, sue within that period. The shortened Statute of Limitations merely serves the purposes of all Statutes of Limitations — putting disputes to rest and requiring suits to be brought while the evidence is fresh and available. [112 Misc 2d 923.]