200 N.J. Super. 109 (1985)
490 A.2d 371
AMENIP CORPORATION, PLAINTIFF-APPELLANT,
v.
ULTIMATE DISTRIBUTION SYSTEMS, INC., DEFENDANT-RESPONDENT.
Superior Court of New Jersey, Appellate Division.
Submitted February 21, 1985.
Decided March 29, 1985.
*111 Before Judges MATTHEWS, FURMAN and HAVEY.
Anthony Limitone, Jr., attorney for appellant (Anthony Limitone, Jr., on the letter brief).
Richard L. Bernstein, attorney for respondent (Richard L. Bernstein on the letter brief).
The opinion of the court was delivered by HAVEY, J.A.D.
Plaintiff appeals from a summary judgment in favor of defendant dismissing plaintiff's complaint wherein it sought damages against defendant for conversion of its goods that had been stored in defendant's warehouse. The trial court found that plaintiff's action was time-barred by a provision in the written warehouse receipt which required the institution of an action for loss of stored goods within nine months after delivery or notification of the loss, whichever time was shorter.
Plaintiff contends that defendant's conversion of the goods constituted an abrogation of the bailment contract and thus an invalidation of the time-bar provision of the contract. Alternatively, it argues that N.J.S.A. 12A:7-204(3), (identical to Uniform Commercial Code subsection 7-204(3)), which provides that reasonable provisions as to the time and manner of instituting actions "based on the bailment" may be included in a *112 warehouse contract, is only applicable to contract actions and not actions sounding in tort. We disagree with both contentions and affirm.
The facts relevant to this appeal are undisputed and may be simply stated. On December 31, 1981 and January 31, 1982 plaintiff delivered cartons containing disposable butane cigarette lighters to defendant's warehouse for storage. When the cartons were delivered, defendant supplied plaintiff with warehouse receipts for each delivery. Printed on the back of each receipt were terms and conditions of the bailment. Section 12 of those terms and conditions provided in pertinent part as follows:
........
(b) No action may be maintained by the depositor or others against the warehouseman for loss or injury to the goods stored unless timely written claim has been given as provided in paragraph (a) of this section and unless such action is commenced within nine months after date of delivery by warehouseman or within nine months after depositor of record or the last known holder of a negotiable warehouse receipt is notified that loss or injury to part or all of the goods has occurred, whichever time is shorter.
On February 11, 1982, defendant notified plaintiff that 96 cartons of the disposable lighters were missing from its warehouse. Defendant was unable to explain the disappearance of the goods. Plaintiff made a timely written claim for the loss of the goods in accordance with Section 12 of the warehouse receipt. It did not institute suit, however, until April 28, 1983, more than 14 months after plaintiff had been notified of the loss and five months after the time within which suit had to be instituted under Section 12 of the warehouse receipt. The parties have stipulated plaintiff's damages on the loss of the goods at $8,500.
Under N.J.S.A. 12A:7-204 (U.C.C. Section 7-204), a warehouseman may limit liability in case of loss or damage to stored goods by an agreement setting forth a specific liability per article or item, or value per unit of weight. The agreement may also contain reasonable provisions as to the time and manner of presenting claims as well as fixing the time in which *113 an action may be brought against the warehouseman. It provides in pertinent part, as follows:
(1) A warehouseman is liable for damages for loss of or injury to the goods caused by his failure to exercise such care in regard to them as a reasonably careful man would exercise under like circumstances but unless otherwise agreed he is not liable for damages which could not have been avoided by the exercise of such care.
(2) Damages may be limited by a term in the warehouse receipt or storage agreement limiting the amount of liability in case of loss or damage, and setting forth a specific liability per article or item, or value per unit of weight, beyond which the warehouseman shall not be liable.... No such limitation is effective with respect to the warehouseman's liability for conversion to his own use.

(3) Reasonable provisions as to the time and manner of presenting claims and instituting actions based on the bailment may be included in the warehouse receipt or tariff. [Emphasis supplied]
Plaintiff's claim is that "conversion to [defendant's] own use" may be presumed because of defendant's failure to explain the disappearance of the goods. See Jos. H. Reinfeld, Inc. v. Griswold & Bateman Whs., 189 N.J. Super. 141, 146 (Law Div. 1983); I.C.C. Metals, Inc. v. Municipal Warehouse Co., 50 N.Y.2d 657, 431 N.Y.S.2d 372, 409 N.E.2d 849 (Ct. of App. 1980). It argues that the "presumed conversion" results in abrogation of the bailment contract and invalidation of the time-limitation clause, relying on I.C.C. Metals and the majority opinion in Continental Metals v. Municipal Warehouse Co., 112 Misc.2d 923, 447 N.Y.S.2d 849 (Sup.Ct. 1982), aff'd o.b. 92 A.D.2d 477, 459 N.Y.S.2d 406 (App.Div. 1983). The New York Court of Appeals held in I.C.C. Metals that "when a warehouse converts bailed property, it thereby ceases to function as a warehouse and thus loses its entitlement to the protections afforded by the agreement of storage." 431 N.Y.S.2d at 376, 409 N.E.2d at 853. The majority in Continental Metals held that a time-limitation clause, similar to the provision here, was not intended to permit a warehouseman to benefit from the short period of limitation in the event of his conversion of plaintiff's property and that a clause so limiting a bailor's right under such circumstances would not be reasonable and hence unenforceable under subsection 7-204(3). 447 N.Y.S.2d at 852; *114 see also O'Neill v. Supreme Council, Am.L. of Honor, 70 N.J.L. 410 (1904).
Even if we accept plaintiff's contention that defendant's conduct constitutes a "presumed conversion" of plaintiff's goods, we are of the view that the time-limitation clause in Section 12 is not invalidated by that conduct and is clearly enforceable under the provisions of subsection 7-204(3). In I.C.C. Metals, the court found that a conversion renders inapplicable a liability-limiting provision in a warehouse receipt, a result consistent with subsection 7-204(2). 431 N.Y.S.2d at 379. It did not address the issue before us: the effect of a conversion on a time-limitation provision permitted under subsection 7-204(3). Our disagreement with the majority in Continental Metals is that we believe that it ignores a clear variance in the language between subsections (2) and (3) of Section 7-204. Subsection 7-204(2), permitting contractual limitations of damages, specifically excepts from its applicability "conversion to the [warehouseman's] own use," while subsection 7-204(3) does not. Clearly, our Legislature (following the U.C.C.), envisioned potential conversion actions against warehousemen in enacting the statute and the need to insert a "conversion" exception into subsection 7-204(2). Since we are bound to construe the statute as written, we must assume that the Legislature's omission of a like exception from subsection 7-204(3) was intentional. See Refrigeration Sales Co., v. Mitchell-Jackson, Inc., 575 F. Supp. 971, 975 (N.D.Ill. 1983).
Moreover, there is a sound policy consideration supporting inclusion of the "conversion" exception in subsection 7-204(2). Without it, the dishonest warehouseman will be encouraged to convert goods, knowing that his potential liability will be limited to the amount agreed to under the contractual limitation contained in the warehouse receipt or storage agreement. See Continental Metals, supra, 459 N.Y.S.2d at 407, (Silverman, J., dissenting). Subsection 7-204(3), on the other hand, gives the warehouseman no such encouragement. If he *115 converts the goods, he is still liable for their entire value so long as the bailor institutes an action within the agreed upon time. The "conversion" exception is thus not needed. The purpose of subsection 7-204(3) is not to limit liability, but to prevent litigation of stale claims, penalize dilatoriness and to serve as a measure of repose. See Ochs v. Federal Ins. Co., 90 N.J. 108, 112 (1982). We hold that conversion actions are not excepted from N.J.S.A. 12A:7-204(3).
Plaintiff's second contention is that actions for conversion are not "based on the bailment" and thus sub-section 7-204(3) does not apply. It argues that that phrase emphasizes the bailment relationship, essentially one of contract, see Silvestri v. South Orange Storage Corp., 14 N.J. Super. 205, 210 (App.Div. 1951), and thus impliedly excludes actions sounding in tort.
We reject plaintiff's construction of subsection 7-204(3) as too narrow. Each section of Subchapter 2 of Chapter 7 (Section 7-201 et seq.), with the exception of Section 7-204, addresses the terms of the underlying bailment contract and remedies available for breach thereof. E.g. Section 7-202 (form of warehouse receipt); 7-209 (lien of warehouseman), and 7-210 (enforcement of lien). Section 7-204, on the other hand, focuses on the warehouseman's conduct which may form the basis of an action in tort. It pertains to his duty to use care (subsection 7-204(1)) and the manner by which his liability for the breach of that duty which results in loss or damage to the stored goods may be contractually limited. (Subsection 7-204(2)). We find that the Legislature, in drafting subsection (3), was focusing on that same tortious conduct and intended that when a tort action arises out of the bailor-bailee relationship and relates to the bailed goods, the action is "based on the bailment." Moreover, in our view plaintiff's construction would "swallow up the rule," since a claim against a bailor who is unable to explain the absence of goods could be pleaded, not as a breach of the bailment contract, but as a "presumed conversion," thereby rendering the subsection inapplicable. See Refrigeration Sales *116 Co. v. Mitchell-Jackson, Inc., supra, 575 F. Supp. at 975. We conclude that a tort action, under the circumstances of this case, is an "action based on the bailment."
The time-bar provision contained in Section 12 of the warehouse receipt is enforceable under the provisions of Section 7-204(3). The trial judge properly found that plaintiff's claim is time-barred. The order granting defendant's motion for summary judgment is affirmed.