Hartree Partners, LP v Esmark Steel Group-Midwest, LLC (2022 NY Slip Op 06572)

Hartree Partners, LP v Esmark Steel Group-Midwest, LLC

2022 NY Slip Op 06572

Decided on November 17, 2022

Appellate Division, First Department

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and subject to revision before publication in the Official Reports.

Decided and Entered: November 17, 2022

Before: Kern, J.P., Scarpulla, Rodriguez, Pitt, Higgitt, JJ. 

Index No. 652140/19 Appeal No. 16669 Case No. 2022-00133 

[*1]Hartree Partners, LP, Plaintiff-Appellant-Respondent,
v
Esmark Steel Group-Midwest, LLC, Defendant-Respondent-Appellant.

Stroock & Stroock & Lavan LLP, New York (Melvin A. Brosterman of counsel), for appellant-respondent.
McGuire Woods, New York (Gerald J. Stubenhofer, Jr. of the bar of the Commonwealth of Pennsylvania, admitted pro hac vice, of counsel), for respondent-appellant.

Order, Supreme Court, New York County (Barry R. Ostrager, J.), entered January 3, 2022, which denied plaintiff's motion for summary judgment on its breach of contract claim and dismissing defendant's counterclaim for breach of contract, and denied defendant's motion for partial summary judgment declaring that the terms in plaintiff's emailed offers and defendant's later purchase orders constitute the terms of the parties' agreement and that plaintiff's confirmation did not alter those terms, unanimously affirmed, without costs.
In this action concerning a dispute over the terms of a series of three agreements between plaintiff Hartree Partners, LP, a steel trader, and defendant Esmark Steel Group-Midwest, LLC, a steel buyer and distributor, for the purchase of steel through plaintiff for shipment from Vietnam to the Midwestern United States, neither party established its entitlement to summary judgment on its motion. There is a triable issue of fact as to whether the agreements are limited only to plaintiff's price quote and defendant's purchase orders, or whether plaintiff's confirmation, along with the sales contracts incorporating general terms and conditions, constituted the parties' agreement. Whether a price quote is considered an offer is a question of fact dependent on the nature, conduct and circumstances surrounding the transaction (Gerard Lollo & Sons v Stern, 168 AD2d 606, 606 [2d Dept 1990]), and the record does not resolve the issue here. Defendant failed to eliminate all triable issues of fact with respect to whether the price quote was an offer, as generally, price quote-offers include not just a unit price, but also a quantity (cf. Robert Bosch Corp. v ASC Inc., 195 Fed Appx 503, 506 [6th Cir 2006]; Rochester Plumbing Supply Co. v A. Burgart, Inc., 49 AD2d 78, 79-82 [4th Dept 1975]).
Similarly, the record presents a triable issue of fact as to whether defendant accepted the terms of the sales contracts attached to plaintiff's confirmations. No unequivocal evidence supports plaintiff's argument that defendant's silence bound it to plaintiff's general terms and conditions, which materially altered the parties' understanding (see Uniform Commercial Code § 2-207[2][b]; Matter of Albrecht Chemical Co. [Anderson Trading Corp.], 298 NY 437, 440-441 [1949]). Defendant's president's deposition testimony shows that there was a considerable amount of ambiguity as to what terms defendant accepted. Although plaintiff's practice was to email a contract sometime after the parties agreed to a sale, viewed in the light most favorable to defendant, there is a triable issue as to whether defendant regarded plaintiff's general terms and conditions as binding, and there was no history of either party invoking general terms and conditions or the other terms attached to the confirmations during their business relationship.
A triable issue also exists as to whether defendant's attempt to negotiate a lower price based on changed market conditions amounted [*2]to an overt communication of intent to repudiate the agreement. Defendant's CEO disputed plaintiff's characterization that he presented the lower pricing proposal as a take-it-or-leave-it demand that plaintiff lower the price (see Uniform Commercial Code § 2-610, Comment 2; Tenavision Inc. v Neuman, 45 NY2d 145, 150 [1978]) or as an "absolute and unequivocal refusal to perform or a clear indication of the inability" to perform (see e.g. O'Connor v Sleasman, 14 AD3d 986, 988 [3d Dept 2005], lv denied 9 NY3d 806 [2007]; Matter of Express Indus. & Term. Corp. v New York State Dept. of Transp., 252 AD2d 376, 379-380 [1st Dept 1998] revd on other grounds 93 NY2d 584 [1999]).
Supreme Court also correctly denied plaintiff's motion insofar as it sought summary judgment dismissing defendant's counterclaim for breach of contract. Testimony by plaintiff's head of credit raised a triable issue of fact as to whether plaintiff, alarmed by defendant's financial instability and by plaintiff's credit insurer's failure to cover the entire purchase, decided to renege on the parties' agreement by refusing to release the steel deliveries (see Norcon Power Partners v Niagara Mohawk Power Corp., 92 NY2d 458, 463 [1998]).
We have considered the parties remaining contentions and find them unavailing.
THIS CONSTITUTES THE DECISION AND ORDER OF THE SUPREME COURT, APPELLATE DIVISION, FIRST DEPARTMENT.
ENTERED: November 17, 2022